IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAMARA FOUCHE and ADRIANA UNDERWOOD, | ) ) ) ) Case No. 1:23-cv-02232 |
| Plaintiffs, | ) ) ) Judge Thomas M. Durkin |
| v. | ) Magistrate Judge Jeffrey T. Gilbert ) |
| CHICAGO POLICE OFFICER WILLIAM GROSSKLAS (#17311), SUPERINTENDANT DAVID BROWN, and CITY OF CHICAGO, | ) ) ) ) ) |
| Defendants. | ) ) ) ) ) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT MOTION TO STRIKE CERTAIN PARAGRAPHS FROM PLAINTIFFS' COMPLAINT**

Plaintiffs, by and through their respective undersigned attorneys, hereby respond to Defendants' Joint Motion to Strike Certain Paragraphs from Plaintiffs' Amended Complaint. Dkt. No. 22. For the reasons stated below, Defendants' motion should be denied.

**INTRODUCTION**

On May 30, 2020, Plaintiffs participated in a demonstration in downtown Chicago in support of the Black Lives Matter movement. Plaintiffs allege that on that date, Defendant Officer Grossklas violated their constitutional rights by aggressively pushing them off a traffic divider without giving them an opportunity to move and without justification.

Plaintiffs have brought this lawsuit alleging numerous violations of their constitutional rights, including claims for excessive force and violations of the First Amendment and the Equal Protection clause of the Fourteenth Amendment. Plaintiffs also allege a *Monell* claim against

1

Defendant City of Chicago and CPD Superintendent David Brown (Count V). As part of this claim, Plaintiffs allege that the constitutional violations they suffered were directly and proximately caused by the City of Chicago and Chicago Police Department (CPD)'s interrelated *de facto* policies, practices, and customs, including using excessive force against protesters; using lethal force against protesters, including striking them in the head with batons; escalating encounters with physical force and verbal slurs or taunts; falsely arresting protesters; retaliating against protesters who speak out against police violence; failing to adequately train officers to respond to protest; failing to hold accountable officers who violate protesters' rights; and maintaining and condoning the Code of Silence within CPD. Am. Compl. ¶ 191. Plaintiffs specifically allege that these policies and practices are well-known within CPD and that the City has sanctioned these policies and practices and acted with deliberate indifference. *Id.* ¶¶ 192–95. Plaintiffs further allege that Defendant Superintendent Brown was the final policymaker for CPD's response to protests and was deliberately indifferent to these policies and practices. *Id.* ¶¶ 196–200.

To support their claim that CPD has an unlawful policy and practice, Plaintiffs cite other instances where CPD has violated the constitutional rights of protesters. Some of those instances include other demonstrations during the summer of 2020, *id.* ¶¶ 40, 59–69, while others include protests which occurred years or decades prior to 2020, going back as far as 1877, *id.* ¶¶ 71–126. Plaintiffs also cite examples of CPD officers expressing animus against protesters, *id.* ¶¶ 127–29, along with the Federal Consent Decree, lawsuits, admissions by City of Chicago officials, and official government reports that document CPD's widespread policy and practice of using excessive force and the existence of a Code of Silence within CPD. *Id.* ¶¶ 130–166.

Defendants have filed a motion to strike over 80 paragraphs from Plaintiffs' Amended

Complaint which support their *Monell* policy and practice claim, or, alternatively, to strike the Complaint in its entirety. These paragraphs go directly to Plaintiffs' claims against the Defendants. The Defendants' motion should therefore be denied.

## BACKGROUND

Plaintiffs have filed an Amended Complaint alleging seventeen counts against Defendants Officer William Grossklas, Superintendent David Brown, and the City of Chicago. Dkt. No. 15. Plaintiffs initially brought their claims on November 19, 2020, as part of a multi-Plaintiff lawsuit alleging unconstitutional actions by the Chicago Police Department at a series of demonstrations during the summer of 2020 protesting anti-Black racism and police violence. *See Protesters in Support of Black Lives, et al., v. City of Chicago, et al.*, No. 1:20-cv-6851, Dkt. No. 1. Defendants filed a Motion to Sever in that matter and following a meet-and-confer, the parties reached an agreement to file a joint motion on September 1, 2022. No. 1:20-cv-68651, Dkt. No. 127. Judge Coleman granted the joint motion and on April 10, 2023, the Executive Committee ordered the cases to be randomly reassigned. Dkt. No. 1.

On April 26, 2023, this Court issued an order directing Plaintiffs to "prepare and file, within 15 days, an amended complaint limited to Ms. Fouche and Ms. Underwood's claims." Dkt. No. 12. Contrary to Defendants' mischaracterization, Plaintiffs did precisely that. On May 11, 2023, Plaintiffs filed an Amended Complaint, which included their *Monell* claim against Defendant City of Chicago and CPD Superintendent David Brown (Count V), a failure to intervene claim against CPD Superintendent Brown (Count IV), and the factual basis to support those claims. Dkt. No. 15.

Defendants have moved to strike the majority of the paragraphs supporting Plaintiffs' *Monell* claim. Dkt. No. 22. Defendants seek to limit the factual basis in Plaintiffs' Amended

3

Complaint to the claims they specifically bring against Defendant Grossklas, disregarding Plaintiffs' *Monell* claim against Superintendent Brown and the City of Chicago. Defendants further make the inaccurate claim that Judge Coleman has "rejected" the "litigation strategy" of pursuing a *Monell* claim against the City of Chicago and Superintendent Brown. Defs. Mot. at 4–5. Judge Coleman did not "reject" any of Plaintiffs' claims, she simply granted the parties' joint motion to sever. No. 1:20-cv-6851, Dkt. No. 142. The order the Executive Committee entered specifically identifies Superintendent Brown and the City of Chicago as defendants in each of the severed cases, underscoring that the *Monell* claims are to proceed against those defendants in each severed case. Dkt. No. 1. In their Amended Complaint, Plaintiffs plead a *Monell* claim and cite facts in support of such a claim. There is no legal basis to support Defendants' motion to strike facts that support Plaintiffs' *Monell* claim.

## LEGAL STANDARD

Motions to strike are strongly disfavored in the Seventh Circuit. The law allows for a court to strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter, on motion made by a party. Fed. R. Civ. P. 12(f)(2). The Seventh Circuit and courts in this district have repeatedly emphasized that such motions are disfavored. *See Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (motions to strike are disfavored because they potentially only serve to delay); *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 821 (7th Cir. 2001) ("We also take this opportunity to advise defense counsel against moving to strike extraneous matter unless its presence in the complaint is actually prejudicial to the defense . . . Such motions are what give 'motion practice' a deservedly bad name."); *AEL Fin., L.L.C. v. Burns*, No. 10 C 4335, 2010 WL 4313988, at *1 (N.D. Ill. Oct. 19, 2010) ("Motions to strike are disfavored."); *Ty Inc. v. Licensing*, No. 1:18-CV-2726, 2019

4

WL 13084202, at *2 (N.D. Ill. Feb. 21, 2019) ("Motions to strike are generally disfavored due to their tendency to only delay the proceedings."). As Wright & Miller explain, motions to strike are disfavored "[b]oth because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or harassing tactic." 5C Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 1380 (3d ed., April 2021 Update). Because motions to strike are disfavored, courts in this circuit require movants to meet a high standard: "[a] motion to strike should not be granted unless . . . the language in the pleading has 'no possible relation' to the controversy and is clearly prejudicial; [it] is essentially a relevance inquiry." *Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991, 1007 (N.D. Ill. 2013). Defendants have not met this high standard here.

## ARGUMENT

Defendants move to strike the majority of the paragraphs from Plaintiffs' Amended Complaint that support their policy and practice claim, brought pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

In their Amended Complaint, Plaintiffs cite numerous incidents of CPD's unconstitutional conduct to prove their *Monell* claim. This is not only permitted, but required by case law where a plaintiff is alleging that there is a *de facto* policy of unconstitutional conduct, as established by a pattern and practice. The Supreme Court "has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S. H. Kress & Co.*, 398 U. S. 144, 167–168 (1970)). "[P]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*."

*Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985); *see also Calderone v. City of Chicago*, 979 F.3d 1156, 1164 (7th Cir. 2020) ("One single incident cannot suffice; rather, [a plaintiff] must show 'a series of constitutional violations.'" (quoting *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 531 (7th Cir. 2000))).

Courts have demonstrated significant hesitancy in striking materials that tend to demonstrate *Monell* liability. *See, e.g.*, *Boykins v. City of San Diego*, No. 21-cv-01812-AJB-AHG, 2022 WL 3362273, at *9 (S.D. Ca. Aug. 15, 2022); *Sanchez v. Cnty. of Sacramento*, No. 2:19-cv-01545-MCE-AC, 2021 WL 4066262, at *5 n.7 (E.D. Cal. Sep. 7, 2021) (citing *Franklin v. City of Chicago*, No. 1:18-CV-06281, 2020 WL 374669, at *4 (N.D. Ill. Jan. 23, 2020)); *Rodriguez v. City of New York*, 2016 U.S. Dist. LEXIS 76292 (E.D.N.Y. June 13, 2016); *Mucci v. Twp. of Upper Darby*, 2015 U.S. Dist. LEXIS 196874 (E.D. Pa. Mar. 31, 2015); *Cantu v. City of Portland*, No. 3:19-cv-01606-SB, 2020 WL 2952972, at *6 (D. Or. June 3, 2020). The Court should take the same approach here and deny Defendants' motion.

## I. CPD's Unconstitutional Conduct at Protests During the Summer of 2020 Support Plaintiffs' *Monell* Claim

Plaintiffs have brought a claim against Defendants City of Chicago and Superintendent Brown, alleging that the City of Chicago has a series of interrelated *de facto* policies, practices, and customs of violating the constitutional rights of protesters. Am. Compl. ¶¶ 188–201. In support of their claim, Plaintiffs cite numerous instances to demonstrate that the Chicago Police have engaged in this type of conduct not only on May 30, 2020, but throughout the summer of 2020. *Id.* ¶¶ 40, 59–69. Specifically, Plaintiffs cite examples where police engaged in unlawful conduct against protesters at demonstrations downtown on May 29–31, 2020, *id.* ¶ 40; in Hyde Park on May 31, 2020, *id.* ¶ 59; in Uptown and Old Town on June 1, 2020, *id.* ¶¶ 60–61; in Grant Park on July 17, 2020, *id.* ¶¶ 62–68; and downtown on August 15, 2020, *id.* ¶ 69.

6

The examples Plaintiffs cite demonstrate that the Defendants' actions on May 30, 2020, were the result of a "widespread policy at issue rather than a random event." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009). All of these instances were close in time to the protest where Plaintiffs were brutalized, involved the same movement against racism and police violence, and occurred while CPD was under the supervision of Defendant Superintendent Brown. The proximity in time and similarity of circumstances between these incidents make them highly relevant in establishing the existence of a *de facto* policy. The fact that these incidents occurred shortly after the violations of Plaintiffs' rights does not change that analysis, as "a *Monell* claim may rest on alleged constitutional violations that occur after misconduct at issue in that case." *Starks v. City of Waukegan*, No. 09 C 348, 2013 U.S. Dist. LEXIS 156545, at *6–7 (N.D. Ill. Oct. 31, 2013); *see also Sherrod v. Berry*, 827 F.2d 195, 204–05 (7th Cir. 1987) (affirming the admission of evidence regarding a separate suit alleging police misconduct, even though the incident giving rise to the separate suit occurred one month after the event upon which the plaintiff's claims were based), *vacated on other grounds*, 835 F.2d 1222 (7th Cir. 1988), *remanded for new trial*, 856 F.2d 802 (7th Cir. 1988) (en banc); *Karney v. City of Naperville*, No. 15 C 4608, 2016 WL 6082354, at *11 (N.D. Ill. Oct. 18, 2016) ("While the *practice or custom* constituting an unofficial policy must have existed prior to the incident involving the plaintiff for it to have been a moving force behind the plaintiff's incident, that does not mean later occurring incidents can never be indicative of the existence of a pre-existing practice or custom."); *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996) ("although it occurred after [the plaintiff's] experience, [the subsequent incident of alleged excessive force] may have evidentiary value for a jury's consideration [of] whether the City and policymakers had a pattern of tacitly approving the use of excessive force"); *Foley v. City of Lowell*, 948 F.2d

10, 14 (1st Cir. 1991) ("Contrary to the City's exhortation that the date an incident occurs marks the outside date for evidence-gathering on such an issue, we think that actions taken subsequent to an event are admissible if, and to the extent that, they provide reliable insight into the policy in force at the time of the incident.").

## II. CPD's Unconstitutional Conduct Throughout History Supports Plaintiffs' *Monell* Claim

As articulated in Plaintiffs' Amended Complaint, from its inception to the present day, CPD has used unconstitutional tactics to suppress protests, including excessive force similar to what Plaintiffs suffered. To establish their claim that CPD has a longstanding pattern and practice of violating protesters' rights, Plaintiffs identify five different incidents or series of protests where CPD used unlawful violence or other unconstitutional acts against protesters between 1855–1977, Am. Compl. ¶¶ 73–100; five protests from the 1990s, *id.* ¶¶ 101–05; and three protests from the 2000s, *id.* ¶¶ 106–26. Defendants seek to strike each and every one of these paragraphs, thereby preventing Plaintiffs from relying on *any* prior instance of CPD's unconstitutional conduct directed toward protesters. As discussed above, a plaintiff must identify "more than one instance . . . or even three" to prove up a widespread custom and practice. *Thomas*, 604 F.3d at 303; *see also Dean v. Wexford*, 18 F.4th 214, 236 (7th Cir. 2021) (noting that a "prior pattern of similar violations puts the municipality on notice of the unconstitutional consequences of its policy" and helps to establish deliberate indifference). Defendants' motion is not seeking to strike any "redundant, immaterial, impertinent, or scandalous matter," Fed. R. Civ. P. 12(f)(2); rather, it is seeking to strike highly relevant facts that are necessary for Plaintiffs to properly plead their claim.

The historical allegations in Plaintiffs' Amended Complaint provide crucial context for understanding the CPD's pattern and practice of violating protesters' constitutional rights.

8

*See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404, 405 (7th Cir. 2010) (with regard to *Monell* claims "the Plaintiffs must give enough details about the subject-matter of the case to present a story that holds together . . . [a] more complex case . . . will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the Plaintiffs' mind at least, the dots should be connected."). As illustrated in paragraphs 71–126 in Plaintiffs' Amended Complaint, history demonstrates that each of CPD's actions in the 2020 uprisings had precedence: bludgeoning protestors; arresting peaceful protesters and bystanders; attacking protest personnel like organizers, marshals, and medics; trapping protesters; and indiscriminately using chemical agents on protesters are all classic CPD tactics. Importantly, this history and prior acts demonstrate the Defendants' ongoing deliberate indifference to the risk of harm posed by CPD's *de facto* policies and practices. *See, e.g.*, *Keyes v. School Dist. No. 1*, 413 U.S. 189, 207 (1973) ("[T]he prior doing of other similar acts, whether clearly a part of a scheme or not, is useful as reducing the possibility that the act in question was done with innocent intent." (quoting 2 J. Wigmore, Evidence 200 (3d ed. 1940))).

Courts in this district regularly permit plaintiffs to allege the type of historical context that Defendants attempt to strike in order to support *Monell* claims. For example, in *Savory v. Cannon*, 532 F. Supp. 3d 628, 639–40 (N.D. Ill. 2021), the court relied on allegations in the Plaintiff's complaint dating back to 1959 regarding instances of coerced confessions and fabrication of evidence to deny the defendants' motion to dismiss the plaintiff's *Monell* claim against the Peoria Police Department. *Savory v. Cannon*, No. 17-cv-0204 (N.D. Ill.) Compl. at ¶ 128 (Dkt. No. 1). In *Hill v. Cook County*, 463 F. Supp. 3d 820, 843 (N.D. Ill. 2020), the court denied a motion to dismiss when a plaintiff relied on evidence from 1978—twenty-seven years before the allegations in the complaint—to buttress *Monell* claims against the Cook County

9

Sheriff's Department for a practice of suppressing and manufacturing evidence. *Hill v. Cook County*, No. 18-cv-08228 (N.D. Ill.) First Amend. Compl. at ¶ 55 (Dkt. No. 50); *see also Vega v. Chicago Park District*, 954 F.3d 996, 1011 (7th Cir. 2020) (considering evidence from fifteen years prior to the suit related to a *Monell* claim alleging widespread discrimination); *In re New York City During Summer 2020 Demonstrations*, No. 20-cv-8924, 2021 WL 2894764, at *9 (S.D.N.Y. July 9, 2021) ("Plaintiffs identify a number of police practices that were allegedly wrongfully used or abused during the BLM protests and pleads facts from which it could be inferred that this was not some 'one off' instance of misuse of these practices, but had been part and parcel of the NYPD's 'arsenal' for dealing with political protests for that past two decades. That sufficiently pleads a custom or policy of using excessive force and making false arrests at large protests throughout New York City."); *cf. Keyes*, 413 U.S. at 198–99 (referencing almost ten years of a school district's history of segregation to affirm findings that a district engaged in a pattern and practice of unlawful segregation); *E.E.O.C. v. Chicago Miniature Lamp Works*, 622 F. Supp. 1281, 1295 (N.D. Ill. 1985) (relying on twelve years of employment discrimination data); *E.E.O.C. v. O & G Spring and Wire Forms Specialty Co.*, 705 F. Supp. 400, 402–03 (N.D. Ill. 1988), *aff'd* 38 F.3d 872 (7th Cir. 1994) (reviewing over seventeen years of evidence of an employer's history of racial discrimination).

      Courts in this district have also rejected similar attempts by the City of Chicago to strike portions of the complaint that support a *Monell* claim. For example, in *Weston v. City of Chi.*, No. 20 C 6189, 2021 WL 2156459, at *11–12 (N.D. Ill. May 27, 2021), the court denied the City's Rule 12(f) motion to strike paragraphs from the plaintiffs' complaint that supported their *Monell* claim. In denying the City's motion to strike, the court in *Weston* found that the paragraphs in question were relevant to the *Monell* claim, despite the City's argument that the

Plaintiffs could have pleaded the claim without them. *Id.* at \*12 ("The Court is not aware of any authority that requires a plaintiff to leave out factual details that he will rely on to prove one of their claims, and instead plead the claim in more general terms, because the allegations are embarrassing to the defendants."). The court went on to state that "even if there were no *Monell* claim, the Court likely would not be inclined to engage in the 'judicial editing' defendants ask for." *Id.* (citing *Dace v. Chi. Pub. Sch.*, No. 19 C 6819, 2020 WL 1861671, at \*2 (N.D. Ill. Mar. 18, 2020)).

*Franklin v. City of Chicago*, No. 1:18-CV-06281, 2020 WL 374669 (N.D. Ill. Jan. 23, 2020), is yet another example. Like here, the plaintiffs in that case referenced studies, media reports, photographs, and events going back decades to support their *Monell* claim alleging a policy of unconstitutional conduct by the Chicago Police Department. *Id.* at \*6. The City moved to strike these paragraphs and the court ruled that it "cannot say at the pleading stage that studies on racial bias, statistics on the City's handling of police complaints, and historical events that allegedly show racial bias within the Chicago Police Department are necessarily immaterial or impertinent to Plaintiffs' claim that the City had a racially discriminatory policy." *Id.* Similarly, the paragraphs at issue here are not immaterial or impertinent to Plaintiffs' claims that the City has a policy of violating the rights of protesters. "Instead, they 'add context to Plaintiffs' claims' by alleging facts that, if true, might contribute to Plaintiffs' case." *Id.* (quoting *Brown v. ABM Industries, Inc.*, No. 15 C 6729, 2015 WL 7731945, at \*6 (N.D. Ill. Dec. 1, 2015)).

### III. Online Posts By CPD Officers Support Plaintiffs' *Monell* Claim

Defendants also argue that Plaintiffs' allegations regarding CPD-related social media accounts (Am. Compl. ¶¶ 127–29) should be stricken in large part because the Defendants assert that the accounts are anonymous and/or the posts are drafted by unidentified individuals. Defs.

11

Mot. at 5. Plaintiffs' allegations related to social media postings from the Second City Cop blog and Twitter account support the claim that CPD officers had a *de facto* practice of animus towards protesters—particularly protesters who spoke out against racialized police violence. Am. Compl. ¶¶ 127–28 (describing Second City Cop social media posts that detail hatred towards protesters against police violence and promote violence against the "Black Lives Matter" activist organization); *id.* ¶ 129 (describing Second City Cop tweets that promote violence against protesters and include the words "fuck BLM" (referring to "Black Lives Matter")).

The fact that this social media account was run by an individual or individuals who are not known to the general public is not justification for striking these allegations. It is well known in the Chicago community that Second City Cop is run by police officers. Mainstream media news reports describe it as a "prolific, anonymous blog run by members of the department,"[1] and "[a] venting platform for fed-up officers."[2] In fact, the blog is so well-regarded as an insight to police culture that journalists say it is "frequently the first place" where journalists get insider tips on what is happening in CPD.[3] Further, during its investigation of the CPD, the United States Department of Justice referred to "comments posted anonymously on popular CPD officer blogs," in its report on the CPD, demonstrating that anonymous blogs such as these can provide credible evidence of broader police culture.[4] The comments on this site demonstrate the existence of a culture of hostility toward protesters—particularly protesters who oppose police

---

[1] Maya Dukmasova, Second City Cop blog celebrates slain CPD commander, Chicago Reader (February 14, 2018), https://chicagoreader.com/blogs/second-city-cop-blog-celebrates-slain-cpd-commander/
[2] Ben Bradley, Here's why Chicago's unofficial police blog 'Second City Cop' went dark" WGN Chicago (January 13, 2021), https://wgntv.com/news/wgn-investigates/heres-why-chicagos-unofficial-police-blog-second-city-cop-went-dark/
[3] *Id.*
[4] Investigation of the Chicago Police Department, The U.S. Department of Justice (January 13, 2017) at 147, https://www.justice.gov/opa/file/925846/download

violence and support the Black Lives Matter movement—which is relevant to Plaintiffs' *Monell* claim and should therefore not be struck.

### IV. Other Lawsuits Filed Against the City Support Plaintiffs' *Monell* Claim

Defendants further argue that Plaintiffs' allegations regarding other lawsuits that were filed against the City (Am. Compl. ¶¶ 114–17, 150) should be stricken because "as a matter of law, these cases cannot support *Monell* liability." Defs. Mot. at 8. Defendants are wrong. Courts in this district have consistently held that allegations of other lawsuits are sufficient to support a *Monell* claim. *See Taylor v. Norway*, No. 20-CV-7001, 2021 WL 4133549, at *3–5 (N.D. Ill. Sept. 10, 2021) (finding that plaintiffs' "allegations about complaints and lawsuits against the individual Defendants" were appropriate to support plaintiffs' *Monell* claim at the motion to dismiss stage); *Treadwell v. Salgado*, No. 19 C 3179, 2021 WL 3129290, at *6–7 (N.D. Ill. July 23, 2021) (refusing to dismiss plaintiffs' *Monell* claim where plaintiffs' allegations regarding the "DOJ Report, PATF Report, various statements by public officials, or other lawsuits" supported an inference of causation and deliberate indifference to a widespread custom within CPD); *Karney v. City of Naperville*, No. 15 C 4608, 2016 WL 6082354, at *13 (N.D. Ill. Oct. 18, 2016) (finding that "allegations of two other lawsuits alleging unreasonable search and seizures against City police officers" were "enough for plaintiffs' *Monell* claim condoning illegal search and seizures based on hostility by law enforcement towards individuals, in circumstances similar to plaintiffs', to survive dismissal"); *Pickett v. Dart*, No. 13 C 1205, 2014 WL 919673, at *4 (N.D. Ill. Mar. 10, 2014) (finding that plaintiff's allegations regarding three other lawsuits plausibly suggest that a widespread practice exists).[5]

---

[5] The three cases on which Defendants rely are distinguishable. Defs. Mot. at 8–9. *Brown v. ABM Indus., Inc.,* No. 15-cv-6729, 2015 WL 7731946 (N.D. Ill. Dec. 1, 2015) and *Simon Prop. Grp., L.P. v. mySimon, Inc.*, No. IP99-1195, 2003 WL 23101787 (S.D. Ind. Nov. 4, 2003) did not even involve *Monell* claims. And in *Thomas v. City of Markham*, the court held that allegations of two prior excessive force lawsuits and an expletive uttered by the city's

There is therefore no basis to strike Plaintiffs' allegations regarding other lawsuits that are directly relevant to Plaintiffs' *Monell* claim. *See Ferguson v. Cook Cnty., Ill.*, No. 20-CV-4046, 2021 WL 3115207, at *13 (N.D. Ill. July 22, 2021) (denying the defendant's motion to strike the complaint's allegations concerning the prior verdicts against him because "all of the allegations are relevant to Plaintiffs' theory that the City maintains a custom or practice of failing to investigate, discipline, and/or terminate officers who engage in misconduct").

## V. Defendants Have Not Shown Any Prejudice

Defendants have not met their burden of demonstrating that the allegations they seek to strike are prejudicial in the context of Rule 12(f). Allegations that merely "place [the defendant] in an unflattering light" are not sufficiently "scandalous" or prejudicial for the purposes of a motion to strike. *Volling*, 999 F. Supp. 2d at 1006. Defendants argue that the breadth of Plaintiffs' allegations will make it "unduly burdensome and difficult to file an appropriate responsive pleading." Defs. Mot. at 9. But this cannot justify a motion to strike. Courts have repeatedly held that long complaints—and even complaints that contain repetitive allegations—fail to prejudice the defendants. In *Davis v. Frapolly*, the court denied defendants' motion to strike, finding that even though the complaint "contained surplusage" many of the challenged paragraphs had possible relevance and defendants failed to show any real prejudice. 742 F. Supp. 971, 972 (N.D. Ill. 1990) (citing *von Bulow by Auersperg v. von Bulow*, 657 F. Supp. 1134, 1146 (S.D.N.Y. 1987) (refusing to strike allegations from a complaint that contained "tones ranging from cynical to caustic")). Similarly, other courts in this district have found that "nothing in the

---

mayor *alone* were insufficient to plausibly state a *Monell* claim against the city. No 16 CV 08107, 2017 WL 4340182, at *5 (N.D. Ill. Sept. 29, 2017). Here, by contrast, Plaintiffs details CPD's widespread practice of unconstitutional conduct by citing to federal lawsuits, official government reports, online posts by CPD officers, admissions by City of Chicago officials, references to the federal Consent Decree monitoring team's documentation of CPD's policy and practice violations during the summer of 2020, and historical examples of CPD violence against protesters.

federal rules forbids the filing of prolix [lengthy] complaints." *Sommerfield v. City of Chicago*, 08 C 3025, 2009 WL 500643, at *5 (N.D. Ill. Feb. 26, 2009) (citing *Jackson v. Marion County*, 66 F.3d 151, 154 (7th Cir. 1995)).

Defendants' contention regarding the "scope of discovery" is similarly unavailing. Defs. Mot. at 9. Defendants' hypothetical and premature discovery concerns are certainly not a basis to strike relevant allegations from a complaint. *See Claybon v. SSC Westchester Operating Co., L.L.C.*, No. 20-cv-04507, 2021 WL 1222803, at *8 (N.D. Ill. April 1, 2021) (rejecting defendant's argument that declining to strike allegations from the complaint will require it to engage in vast and burdensome discovery); *Burke v. Lakin Law Firm, PC*, No. 07-CV-0076-MJR, 2007 WL 917380, at *2 (S.D. Ill. Mar. 26, 2007) (denying defendant's motion to strike and explaining that "the complaint as drafted will not necessarily cause Defendant any prejudice . . . [n]or does it follow necessarily that because information is found in a complaint discovery will be permitted regarding it or a jury will be instructed on it").

"[A] successful motion to strike typically seeks to remove unnecessary clutter from the case, because in that situation the motion expedites the case and moves the parties forward." *McDowell v. Morgan Stanley & Co.*, 645 F. Supp. 2d 690, 693 (N.D. Ill. 2009). Defendants' motion does not expedite the case, but rather does the opposite. Defendants seek to have this Court review over 80 paragraphs in the Amended Complaint and improperly make a relevance determination for each paragraph. According to the Seventh Circuit, "such micromanagement of the pleadings would cast district court judges in the role of editors, screening complaints for brevity and focus; they have better things to do with their time." *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001) ("Many lawyers strongly believe that a complaint should be comprehensive rather than brief and therefore cryptic. They think the more comprehensive

15

pleading assists the judge in understanding the case and provides a firmer basis for settlement negotiations. This judgment by the bar has been accepted to the extent that complaints signed by a lawyer are never dismissed simply because they are not short, concise, and plain.").

Accordingly, Defendants' motion should be denied, as nothing in Plaintiffs' Amended Complaint is redundant, immaterial, impertinent, or scandalous.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the Defendants' Joint Motion to Strike Certain Paragraphs from Plaintiffs' Amended Complaint.

Respectfully submitted,

/s/ Vanessa del Valle
Vanessa del Valle

Vanessa del Valle
Roderick and Solange MacArthur Justice Center
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 606611-3609
312-503-5932
vanessa.delvalle@law.northwestern.edu

/s/ Sheila A. Bedi
Sheila A. Bedi

Sheila A. Bedi
Community Justice and Civil Rights Clinic
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611-3609
312-503-8576
sheila.bedi@law.northwestern.edu

/s/ Nora Snyder
Nora Snyder
Ben Elson, Joey L. Mogul, Janine Hoft,

Brad J. Thomson, Jan Susler, Hakeem Muhammad
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642
773-235-0070
brad@peopleslawoffice.com
joeymogul@peopleslawoffice.com
janinehoft@peopleslawoffice.com
ben@peopleslawoffice.com
brad@peopleslawoffice.com
jsusler@peopleslawoffice.com
norasnyder@peopleslawoffice.com
hakeemmuhammad@peopleslawoffice.com

***Counsel for Plaintiffs***